IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

GERALD JEFF WILSON                                             PLAINTIFF

                v.                 Civil No. 3:12-cv-03054-PKH-JRM

CAROLYN W. COLVIN,[1] Commissioner of
Social Security Administration                                     DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.**      **Factual and Procedural Background**

Plaintiff, Gerald Jeff Wilson, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act ("the Act"). 42 U.S.C. ch. 7, subch. XVI.

Plaintiff protectively filed his application on October 6, 2008, alleging an amended disability onset date of December 4, 2008,[2] due to memory loss, depression, back pain, hepatitis C, and panic disorder. Tr. 10, 159. On the application date, Plaintiff was forty-nine years old, a younger individual, with a high school education. Tr. 18, 165. He subsequently changed age categories to closely approaching advanced age. 20 C.F.R. § 416.963.

Plaintiff's application was denied at the initial and reconsideration levels. Tr. 54-57, 65-67. At Plaintiff's request, an administrative hearing was held on May 3, 2010. Tr. 20-43. Plaintiff was

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

[2] Plaintiff alleged an initial disability onset date of October 1, 2007. Tr. 10. By and through his attorney, Plaintiff amended his alleged onset date to December 4, 2008. Tr. 10, 216.

present at this hearing and represented by counsel. The Administrative Law Judge ("ALJ") rendered an unfavorable decision on August 10, 2010, finding Plaintiff was not disabled within the meaning of the Act. Tr. 7-19. Subsequently, the Appeals Council denied Plaintiff's Request for Review on March 28, 2012, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of that decision.

**II.    Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether

the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the Residual Functional Capacity ("RFC") to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**III.    ALJ's Determination**

At step one, the ALJ determined Plaintiff has not engaged in substantial gainful activity since October 6, 2008, the application date. Tr. 12. At step two, the ALJ found Plaintiff suffers from the following severe impairments: depression, mood disorder, anxiety, osteoarthritis of the lumbar spine, hepatitis C, and history of alcohol and drug dependence. Tr. 12-14. At step three, he determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 14-15.

At step four, the ALJ found Plaintiff has the RFC to lift/carry twenty pounds occasionally and ten pounds frequently, sit for six hours in an eight-hour workday, stand and/or walk for six hours in an eight-hour workday, and climb, balance, crawl, kneel, stoop, and crouch on an occasional basis. Tr. 15-18. Mentally, the ALJ determined Plaintiff could perform work in which interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote,

with few variables and little judgment required, and the supervision required is simple, direct, and concrete. Tr. 15-18.

With these limitations, the ALJ determined Plaintiff could not perform any of his past relevant work. Tr. 18. However, after eliciting vocational expert ("VE") testimony, the ALJ found jobs existing in significant numbers in the national economy that Plaintiff could perform.[3] Accordingly, the ALJ concluded Plaintiff was not under a disability from October 6, 2008, the application date, through August 10, 2010, the date of the his decision. Tr. 19.

## IV. Discussion

On appeal, Plaintiff contends the ALJ erred by: (A) failing to evaluate the credibility of witness testimony; (B) dismissing the opinion of Plaintiff's treating psychiatrist; and (C) failing to find jobs existing in significant numbers in the national economy that Plaintiff can perform. *See* Pl.'s Br. 2-15. The Commissioner responds that substantial evidence supports the ALJ's decision. *See* Def.'s Br. 4-13. For the following reasons, the undersigned finds that substantial evidence supports the ALJ's determination.

### A. Witness Testimony

Plaintiff contends the ALJ failed to consider the witness testimony of his employer, Mr. Jarvi. *See* Pl.'s Br. 2-6. With respect to Mr. Jarvi's testimony, the ALJ stated the following:

> Mr. Jarvi, the claimant's employer, testified that the claimant has significant memory problems and requires constant and direct supervision. The claimant can sweep the floor and take out trash, but is incapable of performing a given task independently.

---

[3] The ALJ determined Plaintiff could perform the requirements of representative light, unskilled occupations such as dishwasher, of which there are 1,600 jobs regionally and 191,000 jobs nationally that are performed at the light, unskilled level according to the U.S. Publishing Employment Survey ("USPES"), janitor and cleaner, of which there are 1,300 jobs regionally and 161,483 jobs nationally that are performed at the light, unskilled level according to the USPES, and assembly/production, of which there are 1,500 jobs regionally and 85,400 jobs nationally. Tr. 18-19, 239.

> The claimant's employment is contingent on sustained sobriety and he requires accommodations to perform his job, such as reduced work hours and direct supervision to perform simple tasks. Occasionally, the claimant becomes "stuck in his [thoughts]" and requires redirection.

Tr. 16. The ALJ then discounted the claimant's subjective complaints, noting that his extensive daily activities and ability to maintain employment were inconsistent with his alleged disability. Tr. 17.

"Although specific delineations of credibility findings are preferable, an ALJ's arguable deficiency in opinion-writing technique does not require us to set aside a finding that is supported by substantial evidence." *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996) (quoting *Carlson v. Chater,* 74 F.3d 869 (8th Cir. 1996) (internal quotations omitted)). In this case, the ALJ did not specifically outline his reasons for rejecting Mr. Jarvi's testimony, but it is clear from the record that the ALJ made certain implicit determinations regarding his credibility. The ALJ noted Plaintiff's significant daily activities, including taking care of an ill parent, working on automobiles, mowing the lawn, preparing simple meals, grocery shopping, and performing household chores such as laundry, dishes, and general cleaning. Tr. 17. Additionally, the ALJ noted that Plaintiff was able to work and perform several odd jobs despite his severe impairments. Tr. 17. Notably, Mr. Jarvi testified that Plaintiff can perform simple tasks independently, such as sweeping and taking out the trash, but needs supervision to perform more detailed tasks, such as complex boat assembly. Tr. 34. This testimony is consistent with the ALJ's determination that Plaintiff can perform unskilled work. Again, although it is preferable to have explicit findings concerning the credibility of each witness, any deficiency in this case does not require reversal because the ALJ's conclusion is supported by substantial evidence.

B. <u>Opinion Evidence</u>

Plaintiff argues that the ALJ did not properly evaluate the opinion of Dr. Reichardt, his treating psychiatrist. *See* Pl.'s Br. 6-10. At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

>The ALJ found the following with respect to Dr. Reichardt's opinion:
>
>In this case, the claimant's psychiatrist, A. Reichardt, M.D[.,] opined that the claimant has moderate to marked limitations in most areas of functioning due to mental impairments (Exhibit 13F).  With compliance with his medications and sobriety, the claimant clearly demonstrates [the] ability to perform unskilled work evidenced by his ability to perform his current work as a helper at a boat shop.  The claimant did not maintain sobriety until July 2009; however, he had activities of daily living prior thereto, which clearly showed [the] ability to perform work[-]related activities, including providing care and assistance for his ill mother for a period of 2 years (Exhibit 8F/3)[.]  The claimant can do unskilled work on a continuing and regular basis (40 hours per week) and is essentially proving it.  Therefore, based on the medical evidence discussed herein and other evidence of disability discussed in accordance with Social Security Ruling 96-7p, the undersigned finds the opinion of Dr. Reichardt less credible and unpersuasive.

Tr. 17, 353-355.

"It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Pearsall v. Massanari,* 274 F.3d 1211, 1219 (8th Cir. 2001).  The ALJ considered Dr. Reichardt's findings, but determined they were unsupported by the evidence of record, including the reports of Drs. Harris and Nichols and the state agency physicians, as well as Plaintiff's significant daily activities.  Tr. 13-14, 17.  Although Dr. Reichardt was a treating physician, her treatment sessions comprised a very small portion of Plaintiff's overall substance abuse treatment.  Tr. 262, 264-269.  Moreover, Dr. Reichardt completed a checklist evaluation form and did not provide any additional explanation for her findings.  *See Holmstrom v. Massanari,* 270 F.3d 715, 721 (8th Cir. 2001) (checklist format, generality, and incompleteness limited the evidentiary value of treating physicians' assessments).  For these reasons, the undersigned concludes that substantial evidence supports the ALJ's evaluation of the opinion evidence.

C. <u>Vocational Expert Testimony</u>

Plaintiff contends the ALJ erred in relying on VE testimony that he could perform jobs existing in significant numbers in the national economy. *See* Pl.'s Br. 10-15. A hypothetical question posed to the VE is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir. 2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)). The ALJ may properly exclude any alleged limitation or impairments he rejects as untrue or unsubstantiated. *Hunt*, 250 F.3d at 625. A proper hypothetical question presents to the VE a set of limitations that mirror those of the claimant. *Roe v. Chater,* 92 F.3d 672, 676 (8th Cir. 1996). "Testimony from a VE based on a properly-phrased hypothetical questions constitutes substantial evidence." *Id.* at 675.

First, Plaintiff argues that the mental requirements of assembly, production work exceed his mental RFC. The *Dictionary of Occupational Titles* ("DOT") classifies Assembler, Production as follows:

> 706.687-010   ASSEMBLER, PRODUCTION (any industry)
> Performs repetitive bench or line assembly operations to mass-produce products, such as automobile or tractor radiators, blower wheels, refrigerators, or gas stoves: Places parts in specified relationship to each other. Bolts, clips, screws, cements, or otherwise fastens parts together by hand, or using handtools or portable power tools. May tend machines, such as arbor presses or riveting machine, to perform force fitting or fastening operations on assembly line. May be assigned to different work stations as production needs require. May work on line where tasks vary as different model of same article moves along line. May be designated according to part or product produced.
> GOE: 06.04.22 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 80

Assembler, Production jobs are listed at a reasoning level of two. Appendix C to the DOT, Part III, General Educational Development ("GED") defines Level 2 reasoning jobs as those which require an individual to "apply commonsense understanding to carry out detailed but uninvolved written or

oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Plaintiff argues that he is only capable of performing jobs requiring Level 1 reasoning, namely those which require an individual to "apply commonsense understanding to carry out simple one- or two-step instructions. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.*

Plaintiff's argument is unpersuasive. The ALJ did not limit Plaintiff to work requiring "simple one or two-step instructions," and there is nothing in the record to suggest that he is incapable of performing "detailed but uninvolved" instructions. *See Moore v. Astrue,* 623 F.3d 599, 604 (8th Cir. 2010) (Level 2 reasoning is consistent with the requirements of unskilled work). Moreover, the DOT definitions are "simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range." *Id.* (quoting *Page v. Apfel,* 484 F.3d 1040, 1045 (8th Cir. 2007)). The DOT itself cautions that its descriptions may not coincide in every respect with the contents of jobs as performed in particular establishments or at certain localities. *Wheeler v. Apfel,* 224 F.3d 891, 897 (8th Cir. 2000) (quoting *Hall v. Chater,* 109 F.3d 1255, 1259 (8th Cir. 1997)). "In other words, not all the jobs in every category have requirements identical to or as rigorous as those listed in the DOT." *Id.* There is nothing in the record to suggest that the VE did not properly consider Plaintiff's reasoning limitations in determining the occupations he could perform. Here, the ALJ posed a hypothetical question that mirrored the limitations of the Plaintiff. As such, the undersigned finds no error.

Plaintiff also takes issue with the VE's use of the U.S. Publishing Employment Survey ("USPES") in determining he could perform the requirements of dishwasher and janitor/cleaners. In response to the ALJ's hypothetical question, the VE noted that the DOT lists these occupations

as medium and unskilled. Tr. 239. However, using employment data from the USPES, the VE found that a large portion of these occupations are performed at the light, unskilled level: dishwasher (191,000 jobs nationally and 1,600 jobs regionally) and janitors and cleaners (161,483 jobs nationally and 1,300 jobs locally). Tr. 239. The ALJ noted in his decision that the VE departed from the DOT, but determined the USPES corresponds to the Department of Labor's information and is, therefore, accepted in accordance with SSR 00-4p. Tr. 19.

The regulations clearly state that the Agency will take administrative notice of reliable job information available from "various governmental and other publications." 20 C.F.R. § 416.966(d). The regulations then give examples of acceptable vocational sources, including the DOT, County Business Patterns, census reports, occupational analyses prepared for the agency by various state employment agencies, and the Occupational Outlook Handbook. *Id.* Although Plaintiff correctly notes that these publications are prepared by the government, there is no indication that other non-governmental publications cannot be employed. To the contrary, the phrase "other publications" strongly suggests that additional non-governmental publications may be utilized by vocational experts and specialists. Here, the VE used the DOT as a beginning reference point and then supplied data from the USPES to determine the number of jobs within these classifications that are performed at the light level. This is a reasonable explanation for the departure from the DOT. As such, the undersigned finds no error.

## V.     Conclusion

Accordingly, having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision and recommends that the decision be affirmed and Plaintiff's case be dismissed with prejudice. **The parties have fourteen days from receipt of the Report and**

**Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

  ENTERED this 21st day of May 2013.

            /s/ *J. Marschewski*
            HONORABLE JAMES R. MARSCHEWSKI
            CHIEF UNITED STATES MAGISTRATE JUDGE